# IN THE COURT OF APPEALS OF IOWA

No. 18-0237
Filed August 21, 2019

IN THE MATTER OF E.M.,
**Alleged to be Seriously Mentally Impaired,**

**E.M.,**
    Respondent-Appellant.
_____

    Appeal from the Iowa District Court for Des Moines County, Emily Dean,

District Associate Judge.

    E.M. appeals the district court order finding she was seriously mentally

impaired. **REVERSED AND REMANDED WITH INSTRUCTIONS.**

    Andrew L. Mahoney of Crowley & Prill, Burlington, for appellant.

    Thomas J. Miller, Attorney General, and Gretchen Kraemer, Assistant

Attorney General, for appellee State.

    Considered by Vaitheswaran, P.J., and Tabor and Bower, JJ.

**VAITHESWARAN, Presiding Judge.**

In this appeal from an involuntary hospitalization order, E.M. challenges the district court's finding of a serious mental impairment.

An applicant seeking a person's involuntary hospitalization based on mental illness must state a "belief that the respondent is a person who presents a danger to self or others and lacks judgmental capacity due to" "a serious mental impairment as defined in section 229.1."[1]  Iowa Code § 229.6(2)(a)(2) (2017).

> "Seriously mentally impaired" or "serious mental impairment" describes the condition of a person with mental illness and because of that illness lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment, and who because of that illness meets any of the following criteria:
>> (a) Is likely to physically injure the person's self or others if allowed to remain at liberty without treatment.
>> (b) Is likely to inflict serious emotional injury on members of the person's family or others who lack reasonable opportunity to avoid contact with the person with mental illness if the person with mental illness is allowed to remain at liberty without treatment.
>> (c) Is unable to satisfy the person's needs for nourishment, clothing, essential medical care, or shelter so that it is likely that the person will suffer physical injury, physical debilitation, or death.
>> (d) Has a history of lack of compliance with treatment and any of the following apply:
>>> (1) Lack of compliance has been a significant factor in the need for emergency hospitalization.
>>> (2) Lack of compliance has resulted in one or more acts of serious physical injury to the person's self or others or an attempt to physically injure the person's self or others.

*Id.* § 229.1(20); *accord In re J.P.*, 574 N.W.2d 340, 343 (Iowa 1998) (requiring proof that a person have: "(1) a mental illness, consequently (2) to lack 'sufficient

---

[1] An applicant also may allege that a person has "[a] substance-related disorder as defined in section 125.2."  That provision was not invoked.

judgment to make responsible decisions with respect to the person's hospitalization or treatment' and (3) to be likely, if allowed to remain at liberty, to inflict physical injury on 'the person's self or others,' to inflict serious emotional injury on a designated class of persons, or be unable to satisfy the person's physical needs"). Clear and convincing evidence must support the allegations made in the petition. *See* Iowa Code § 229.12(3); *J.P.*, 574 N.W.2d at 342. "We will not set aside the trial court's findings unless, as a matter of law, the findings are not supported by clear and convincing evidence." *J.P.*, 574 N.W.2d at 342.

The district court made the following general findings: (1) E.M. suffered from a serious mental illness; (2) E.M. lacked the judgment to make a responsible decision regarding her hospitalization or treatment; (3) E.M. was "treatable and would benefit from treatment"; (4) E.M. "was likely to physically injure herself or others or likely to inflict severe emotional injury on those unable to avoid contact with" her; and (5) E.M. was "in need of in-patient evaluation and treatment." E.M. contends the first, second, and fourth findings are not supported by clear and convincing evidence.

The involuntary hospitalization application alleged E.M. presented to an emergency department "for psychotic episode"; was "paranoid and having auditory hallucinations"; was "not being compliant with treatment"; was "agitated and attempting to leave"; was "a danger to herself [and] others"; and required "inp[atient] treatment." An affidavit in support of the application stated in its entirety: "Active psychosis and delusions. P[atient] is a danger to herself if she leaves." A physician's report in support of the application answered "Yes" to the question whether E.M. was mentally ill and explained she was "abusing cocaine,

which resulted in significant mood and thought disturbance" and "[s]he became psychotic and delusional." On the question of whether E.M. was capable of making responsible decisions with respect to her hospitalization or treatment, the physician answered "No" and explained that she "minimize[d] cocaine abuse and resultant significant psychiatric symptoms," although she was "compliant with her treatment." On the question of whether E.M. was likely to physically injure herself or others if allowed to remain at liberty with treatment, the physician answered, "Yes" and explained, "If patient continues to abuse cocaine and does not get involved in substance abuse treatment, [s]he will experience similar psychotic symptoms and behavioral disturbances which are detrimental for her physical and mental health." This was the sum and substance of the evidence supporting the district court's findings—evidence that the State conceded was "spare."

The evidence suffices to support the district court's finding that E.M. had a serious mental illness. The physician cited E.M.'s mood and thought disturbance as well as her active psychosis and delusions. The physician also mentioned E.M.'s history of major depressive disorder.

However, the record does not contain clear and convincing evidence to support the district court's finding that E.M. lacked the judgment to make a responsible decision regarding her hospitalization or treatment. The evidence established quite the opposite—E.M. came to the emergency department voluntarily and was compliant with treatment.

The record also does not contain clear and convincing evidence to support the district court's finding that E.M. "was likely to physically injure herself or others or likely to inflict severe emotional injury on those unable to avoid contact with

[her]." "The danger the person poses to herself or others must be evidenced by a 'recent overt act, attempt or threat.'" *Id.* at 344. Neither the application nor the physician's report identified a recent overt act. The State concedes as much, noting the record "contain[s] few specific reasons for the judgment of dangerousness." The only evidence supporting this element was a prediction that E.M. might compromise her physical and mental health if she continued to abuse drugs. A future possibility of a dangerous act without a past act of aggression does not meet the requirement. *See In re Foster*, 426 N.W.2d 374, 378 (Iowa 1988) ("In the context of civil commitment we hold that an 'overt act' connotes past aggressive behavior or threats by the respondent manifesting the probable commission of a dangerous act upon himself or others that is likely to result in physical injury."). As for evidence that E.M.'s daughter intervened to assist her, "emotional trauma is an insufficient basis for involuntary hospitalization." *J.P.*, 574 N.W.2d at 344.

We conclude the hospitalization order is not supported by clear and convincing evidence. Accordingly, the order is reversed. We remand the matter to the district court with instructions to deny the application and terminate the proceeding. *See* Iowa Code § 229.12(3)(c).

**REVERSED AND REMANDED WITH INSTRUCTIONS.**